## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ARMAND BESSETTE,

                    Plaintiff,

     v.

IKO INDUSTRIES, INC.,

                   Defendant.

**CIVIL ACTION**
**No. 4:19-cv-40017-TSH**

## REPORT AND RECOMMENDATION AND ORDER

**August 18, 2020**

Hennessy, M.J.,

On April 19, 1999, May 7, 1999, and May 29, 1999, Plaintiff Armand Bessette purchased shingles manufactured by Defendant IKO Industries, Inc. ("IKO") from Howe Lumber Co. ("Howe"). [Dkt. No. 34, Ex. A2 ("Record"), at pp. 0005-0007]. Though Bessette did not receive any marketing or promotional material regarding IKO's products, Bessette chose to purchase the shingles manufactured by IKO because of a "thirty-year warranty" made by Howe. [Dkt. No. 34, Ex. B ("Bessette Depo.), at p. 29, lines 10-14, p. 30, lines 3-10]. On or about June 1999, Howe delivered the IKO shingles to Bessette. [Bessette Depo. at p. 35, line 10]. The shingles arrived wrapped in plastic without notice of a warranty offered by IKO. [Bessette Depo. at p. 37, lines 20-21]. Bessette and his brother installed the shingles themselves. [Bessette Depo. at p. 39, lines 15-19].

In 2016, though his roof had not leaked, Bessette learned that the IKO shingles had deteriorated and needed replacement. [Bessette Depo. at p. 53, lines 23-24]. On September 27, 2016, Bessette submitted a warranty claim form to IKO. [Bessette Depo. at p. 56, lines 13-24;

Record at pp. 0003-0004].   IKO offered Bessette $473.55 in a response, and Bessette counteroffered by requesting $29,000.  [Record at pp. 0032-0033, 0035-0037].

On November 21, 2018, Bessette filed suit against IKO in Worcester Superior Court alleging breach of the implied warranty of fitness for a particular propose (*Count I*); breach of the implied warranty of merchantability (*Count II*); breach of express warranty (*Count III*); and violation of the Massachusetts Consumer Protection Act (*Count IV*).  [Dkt. No. 1, Ex. 1].   On January 17, 2019, IKO removed this case to this court on diversity grounds.  [Dkt. No. 1].

On March 10, 2020, Bessette filed a motion requesting this court enter the discovery sanction of default judgment pursuant to Fed. R. Civ. P 37.  [Dkt. No. 32].  On March 22, 2020, IKO opposed Bessette's motion for default and moved to strike portions of Bessette's filings which IKO characterized as *ad hominem* attacks.  [Dkt. No. 34].  On March 27, 2020, IKO filed a motion for summary judgment.  [Dkt. No. 38].  On April 7, 2020, Bessette opposed IKO's motion for summary judgment and moved to strike affidavits attached in the record.  [Dkt. Nos. 40, 43].  On June 22, 2020, following an order from this court enjoining the parties from further filing, IKO requested leave to file a motion to quash a third-party subpoena served by Bessette.  [Dkt. No. 52]. These motions have been referred to the undersigned.  [Dkt. No. 53].

For the reasons stated herein, the undersigned recommends that this court grant Defendant's Motion for Summary Judgment in toto.  [Dkt. No. 38].  The undersigned further recommends that this court deny Plaintiff's Motion to Strike Affidavits Attached to Defendant's Summary Judgment Motion [Dkt. No. 43] and deny Defendant's Motion to Quash Non-Party Subpoena [Dkt. No. 52] as moot.  The undersigned denies Plaintiff's Motion for the Discovery Sanction of Default Judgment [Dkt. Nos. 32, 33, 36] and denies Defendant's Cross-Motion to Strike *Ad Hominem* Attacks [Dkt. No. 34].

## I.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.   Standard

"The objective of summary judgment is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico, 394 F.3d 40, 42 (1st Cir. 2005) (quoting Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)).  When considering a motion for summary judgment, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the non-moving party. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994).  A fact is "material" when it might affect the outcome of the suit under the applicable law. Id.  The moving party bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003).  In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### B.   The Limited Warranty

Throughout this litigation, IKO has insisted that Bessette's breach of express warranty claim alleges a breach of an agreement titled "Asphalt Shingle Limited Warranty" ("the Limited

Warranty").[1]  [Record at pp. 0039-0042].  The Limited Warranty contains numerous limitations, including that a claimant is required to file suit within one year after the date the cause of action accrued.  [Record at p. 0039].  A claimant under the Limited Warranty is also barred from recovering on implied warranty claims to the extent the law permits IKO to waive its liability. [Record at p. 0041].  IKO has relied on these terms in the Limited Warranty to argue for dismissal of Bessette's case.

Bessette, on the other hand, does not argue that a particular provision of the Limited Warranty is inapplicable to avoid summary judgment – *e.g.* that the one-year statute of limitations does not apply.  Cf. In re IKO Roofing Shingle Products Liability Litigation, 09-md-2104, 2013 WL 12111189, at *3 (C.D. Ill. Apr. 12, 2013) (evaluating fraudulent concealment exception to statute of limitations issue).  Rather, he argues that there exists a dispute of fact as to whether the Limited Warranty governs his claims at all.  Bessette stated at his deposition that he did not receive a copy of any version of the Limited Warranty from Howe or IKO at the time of purchase or delivery.  [Bessette Depo. at p. 30, lines 3-10].  Though IKO contends that Bessette received notice of the Limited Warranty in the plastic wrapping of the bundled shingles, Bessette disputes this. [Bessette Depo. at p. 37, lines 20-21].  In accordance with the summary judgment standard, all reasonable inferences must be drawn in Bessette's favor.  As IKO failed to present evidence which can resolve this dispute of fact, there is a triable issue as to whether the Limited Warranty governs Bessette's claims in the instant case.  See Situation Mgmt. Sys. v. Malouf, Inc., 430 Mass. 875, 878 (2000) ("It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present

---

[1] IKO has submitted two documents which it contends may apply to Bessette's claims: a warranty document with an effective date of January 1, 1999 [Record at pp. 0039-0042] and a warranty document with an effective date of June 1, 1999 [Dkt. No. 4, Ex. 4].  As this case is not being decided under the terms of either document, the undersigned need to resolve which document would apply to Bessette's claims.

intention to be bound by that agreement."). Thus, the undersigned recommends finding that a dispute of fact exists as to whether the Limited Warranty applies to Bessette's claims.

### C.      Bessette's Express Warranty Claim

Though the undersigned recommends finding that a dispute of fact exists as to whether the Limited Warranty applies, the undersigned still recommends granting IKO's motion for summary judgment. In order for Bessette to recover on his express warranty claim, he must establish the existence of a breached contract. See Jackson v. Johnson & Johnson and Janssen Pharmaceuticals, Inc., 330 F. Supp. 3d 616, 627 (D. Mass. 2018) ("Because the standard of performance is set by defendant's express promises to the plaintiff, the plaintiff must demonstrate that the defendant promised a specific result and that defendant failed to deliver on his promise and, therefore, breached the express warranty.") (internal quotations and citations omitted). Bessette rejects applying the Limited Warranty in its entirety; instead, Bessette argues that IKO breached an express warranty separate and distinct from the Limited Warranty. See In re IKO Roofing Shingle Products Liability Litigation, 09-md-2104, 2013 WL 12111183, at *3 (C.D. Ill. Nov. 8, 2013) ("The contract either exists or it does not. [Plaintiff] cannot pick and choose among the provisions of the warranty."). However, Bessette failed to present evidence which could establish that a valid express warranty besides the Limited Warranty existed. Bessette insists that the receipts from Howe suffice to create an express warranty binding IKO. The undersigned disagrees.

"Under Massachusetts law, '[t]o create an express warranty, the word warrant need not be used, nor is any precise form of expression necessary; but . . . if the vendor, at the time of the sale, affirms a fact, as to the essential qualities of his goods, in clear and definite language, and the purchaser buys on the faith of such affirmation, that . . . is an express warranty.'" Softub, Inc. v. Mundial, Inc., 53 F. Supp. 3d 235, 252-53 (D. Mass. 2014) (quoting O'Connell v. Kennedy, 328

Mass. 90, 93 (1951)); see also M.G.L. c. 106 § 2-313.  As in other contract actions, the subjective

belief of a party is immaterial.  See T.F. v. B.L., 442 Mass. 522, 527 (2004); see also Alcan

Aluminum Corp. v. Carlton Aluminum of New England, Inc., 35 Mass. App. Ct. 161, 166-67

(1993).  Rather, in order to succeed on an express warranty claim, "the plaintiff must demonstrate

that the defendant promised a specific result."  Anthony's Pier Four, Inc. v. Crandall Dry Dock

Engineers, Inc., 396 Mass. 818, 823 (1986).

Here, Bessette does not identify any specific affirmation or promise made by IKO relating

to its shingles.  Bessette instead submits two receipts from Howe which state "BLD

WEATHERWOOD CHATEAU 30YR" to argue that he is able to recover the cost he spent

replacing his roof.  [Record at pp. 0005, 0007].  Though Bessette refers to IKO's product as a

"thirty-year shingle," Bessette conceded at the hearing that the Howe receipts and a statement from

Howe that the shingles "came with a thirty-year warranty" are the only basis for his breach of

express warranty claim.  A "thirty-year" designation, without more, does not establish such a

breach claim because it is not a specific affirmation of fact or a promise.  See Coca-Cola Bottling

Co. of Cape Cod v. Weston & Sampson Eng'rs, Inc., 45 Mass. App. Ct. 120, 128 (1998) ("[A]n

express warranty promises that a specific result will be achieved . . ..").  Even if Bessette receives

the benefit of an inference that "BLD WEATHERWOOD CHATEAU 30YR" means that IKO's

shingles are "for thirty years," there is no information beyond Bessette's subjective belief what

exactly was promised over that thirty-year period.  See Anthony's Pier Four, Inc., 396 Mass. at

823; see also Morantz Co. v. Clarendon Industries, Inc., 670 F. Supp. 1068, 1073 (D. Mass. 1987)

(distinguishing language which creates an express warranty and "seller's talk" or puffery which

are "subjective and not easily verifiable.").  Indeed, the undersigned cannot discern whether

"30YR" means thirty years without leaks, thirty years without curling, thirty years without

discoloration, or none of the foregoing.  It follows that, without knowing what the promise was, there is no way to determine if a breach occurred.  Accordingly, the undersigned recommends finding that the evidence in the record is insufficient to allow a reasonable factfinder to conclude that "BLD WEATHERWOOD CHATEAU 30YR" or any statement from Howe created a valid express warranty.

At the hearing, Bessette objected to this conclusion because he argued that <u>Coca-Cola Bottling Co. of Cape Cod</u>, 45 Mass. App. Ct. at 128, relaxed the specificity requirements to establish a breach of express warranty claim.   In <u>Coca-Cola Bottling Co.</u>, the plaintiff manufacturer sued the defendant engineering firm for breach of express warranty after the defendant's contractor made explicit promises that the wastewater treatment system it had designed would meet applicable permit limits.  <u>Id.</u> at 128-29.  In a "close" decision, the Massachusetts Appeals Court held that a jury could find that the statement "it would work" – in the context of an ongoing contractual relationship – a specific promise for a specific result.  <u>Id.</u> at 129.  However, unlike <u>Coca-Cola Bottling Co.</u>, Howe and/or IKO did not make other statements which could lend context to or objectively clarify the "30YR" designation which appeared on Howe's receipts.  Furthermore, the "30YR" designation in this case is not as definite as the statement "it would work" which the Massachusetts Appeals Court suggested did not establish an express warranty claim but for the context provided by negotiations between the parties.  <u>Id.</u>

Bessette failed to create a triable issue for his breach of express warranty claim because he has not demonstrated what specific promise or specific result IKO made with regard to his shingles. <u>See</u> <u>Faro v. IKO Industries, Inc.</u>, 2017-0325, 2018 WL 915116, at *4 (N.H. Jan. 26, 2018) (unpublished) (affirming summary judgment where plaintiff "fail[ed] to establish that [IKO] made any guarantee concerning the longevity of the shingles beyond the representation that they came

with the protections of the thirty-year limited warranty.").  Thus, the undersigned recommends granting IKO's motion for summary judgment on this claim.[2]

### D.    Bessette's Other Claims

Bessette's remaining claims, breach of the implied warranty of fitness for a particular purpose (*Count I*), breach of the implied warranty of merchantability (*Count II*), and violation of the Massachusetts Consumer Protection Act (*Count IV*) also fail as a matter of law.

The Massachusetts Uniform Commercial Code imposes a four-year statute of limitations for contract-based breach of implied warranty claims.  See M.G.L. c. 106, § 2-725(1); see also Bay State-Spray & Provincetown Steamship, Inc. v. Caterpillar Tractor Co., 404 Mass. 103, 110-11 (1989).  The code further provides that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach[,]" and that "[a] breach of warranty occurs when tender of delivery is made . . .."  M.G.L. c. 106, § 2-725(2).  Bessette is unable to rely on the "future performance" exception to § 2-725(2) because "an implied warranty, by its nature, does not extend to future performance."  Marks v. Andersen Windows, Inc., 1:14-

---

[2] Not only is evidence of a specific promise lacking but the undersigned questions whether Bessette and IKO had the necessary privity of contract to establish an express warranty claim.  See Sebago, Inc. v. Beazer East, Inc., 18 F. Supp. 2d 70, 98 (D. Mass. 1998) (For breach of express warranty claims, Massachusetts has not "abolish[ed] the privity requirement when the plaintiff seeks to recover solely economic damages."); but see Jacobs v. Yamaha Motor Corp., 420 Mass. 323, 331 (1995) ("[A] buyer of consumer goods has the right to maintain an action for breach of the implied warranty of merchantability against the manufacturer of that product.").  It is undisputed that Bessette purchased the shingles from Howe and did not interact with IKO until 2016.  Therefore, without any privity of contract between Bessette and IKO, Bessette had the burden to establish that Howe was IKO's agent in 1999, in order to sustain his claim of breach of express warranty.  See Bennett Importing, Inc. v. Continental Airlines, No. Civ.A. No. 87-cv-29, 1998 WL 34031697, at *4 (D. Mass. Dec. 27, 1998) (Under Massachusetts law, "the burden of proving the existence of the agency relationship is on the party seeking to establish that an agency relationship exists.").  Here, the evidence in the record does not indicate such a relationship existed between Howe and IKO.  [Dkt. No. 42, Ex. A; Dkt. No. 44, Ex. 1]; see also Restatement (Second) of Agency §§ 12-14 (defining essential characteristics of an agency relationship).  Though Bessette's evidence on this issue is lacking, existence of an agency relationship is usually ''a question of fact for the jury . . . to be determined from all the evidence and reasonable inferences to be drawn therefrom.''  White's Farm Dairy, Inc. v. De Laval Separator Company, 433 F.2d 63, 66 (1st Cir. 1970).  Accordingly, the undersigned does not recommend dismissing Bessette's breach of express warranty on privity grounds though another court has suggested it would be permissible to do so.  See In re IKO Roofing Shingle Products Liability Litigation, 09-md-2104 [Dkt. No. 103], at *3 (C.D. Ill. Apr. 15, 2013) (discussing privity requirement of breach of express warranty under Massachusetts law).

cv-10171 (LTS), 2015 WL 13313489, at *10 (D. Mass. Jan. 16, 2015) (quoting Howard v. IKO Manufacturing, Inc., 2011 Mass. App. Div. 191, at *3 (2011) (dismissing implied warranty claims against manufacturer of IKO shingles)).  Bessette purchased the shingles in April and May of 1999 and received delivery in June 1999.  Accordingly, Bessette's claim of breach of the implied warranty of fitness for a particular propose and his claim of breach of the implied warranty of merchantability became time-barred in June 2003 – well before his November 21, 2018 filing date. The undersigned therefore recommends that these claims be dismissed on summary judgment.  See New England Power Co. v. Riley Stoker Corp., 20 Mass. App. Ct. 25, 27-28 (1985).

Lastly, because Bessette's Chapter 93A claim is derivative of his underlying breach claims, it also fails.  See Pimental v. Wachovia Mortg. Corp., 411 F. Supp. 2d 32, 40 (D. Mass. 2006) ("Since [plaintiff] has failed to allege sustainable breach of contract or negligence claims, and the Chapter 93A claim is based upon the previous two claims, there is no basis for finding [defendant] liable under Chapter 93A.").  The undersigned recommends that IKO's motion be granted for the Chapter 93A claim as well.

### E.    Bessette's Motion to Strike Affidavits and IKO's Motion to Quash

The subject of Bessette's motion are the affidavits of Derek Fee which IKO attached in support of its motion for summary judgment.  [Dkt. No. 38, Ex. 4].  These affidavits relate to the Limited Warranty.  As explained above, the undersigned recommends granting IKO's motions on grounds not related to the Limited Warranty.  Therefore, the affidavits are immaterial to the undersigned's report and recommendation.  Similarly, Bessette's third-party subpoena to Underwriter Laboratories, LLC, and IKO's motion to quash the subpoena are irrelevant and immaterial to this recommendation.  [Dkt. No. 45, Ex. 1].  Thus, if the court adopts the

undersigned's report and recommendation, the undersigned recommends denying Bessette's motion to strike and IKO's motion to quash as moot.

## II.      BESSETTE'S MOTION FOR DISCOVERY SANCTIONS

Prior to IKO filing its motion for summary judgment, Bessette moved this court to enter the sanction of a default judgment against IKO for alleged discovery violations.  [Dkt. No. 32]. Rule 37(b) of the Federal Rule of Civil Procedure permits a court to impose sanctions, including rendering a default judgment, if a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A)(iv).  Here, Bessette does not contend that IKO violated an order from this court.[3]  Therefore, the severe sanction of default judgment would be outside the scope of Rule 37(b) and Bessette's request is therefore denied.  See Luis C. Forteza e Hijos, Inc. v. Mills, 534 F.2d 415, 419 (1st Cir. 1976) ("A default judgment is itself a drastic sanction that should be employed only in an extreme situation.").

Even though the undersigned recommends granting summary judgment in favor of IKO and finds default improper, the court still has discretion to sanction a party for its discovery violations.  See BankAtlantic v. Blythe Eastman Paine Webber, Inc., 12 F.3d 1045, 1046 (11th Cir. 1994) (affirming the district court's imposition of sanctions against the defendant despite the court's judgment in the defendant's favor).  When assessing the appropriateness of a discovery sanction, courts must evaluate the totality of the circumstances.  See Mulero-Abreu v. Puerto Rico, 675 F.3d 88, 93 (1st Cir. 2012).  This inquiry is "not a mechanical one" and varies from case to case.  Benítez-García v. González-Vega, 468 F.3d 1, 5 (1st Cir. 2006).  After reviewing the parties' briefing, the undersigned concludes that sanctions are not appropriate in this case.  Both parties ran afoul of the conference requirements Local Rule 7.1 and Local Rule 37.1.  Additionally, any

---

[3] On October 7, 2019, the court denied IKO's motion for a protective order.  [Dkt. No. 21].  The docket does not reflect any other discovery order issued by the court.

order requiring IKO to supplement its discovery responses would not alter the undersigned's summary judgment recommendation. Therefore, the undersigned denies Bessette's motion for discovery sanctions in toto. As Bessette's motion is denied, the undersigned also denies as moot IKO's Cross-Motion to Strike *Ad Hominem* Attacks.

## **CONCLUSION**

The undersigned RECOMMENDS that this court GRANT Defendant's Motion for Summary Judgment [Dkt. No. 38]. The undersigned further RECOMMENDS that this court DENY Plaintiff's Motion to Strike Affidavits Attached to Defendant's Summary Judgment Motion [Dkt. No. 43] and DENY Defendant's Motion to Quash Non-Party Subpoena [Dkt. No. 52] as moot. The undersigned DENIES Plaintiff's Motion for the Discovery Sanction of Default Judgment [Dkt. Nos. 32, 33, 36] and DENIES Defendant's Cross-Motion to Strike *Ad Hominem* Attacks [Dkt. No. 34].[4]

/s/ David H. Hennessy
David H. Hennessy
U.S. Magistrate Judge

---

[4] The parties are notified that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of service of this Report and Recommendation. The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72(b)(2). The United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See, e.g., United States v. Diaz-Rosado, 857 F.3d 89, 94 (1st Cir. 2017); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).